UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

| | |
|---|---|
| JEROME KING, BENJAMIN BOTOS, CORNELIUS COLLINS, DONNIE TORRES, BARRY DEVALL, RAY ZERINGUE, GREGORY LEJEUNE, BRUCE NAQUIN, MARK BUECHE, BOBBY TRAHAN, NELIS CHASSION, DAVID JONES and BRYAN ROY,<br><br>Plaintiffs,<br><br>VERSUS<br><br>FLOWERS FOODS, INC. and FLOWERS BAKING COMPANY OF BATON ROUGE, LLC,<br><br>Defendants. | CASE NO.: 3:21-CV-00579-BAJ-SDJ<br><br>DISTRICT JUDGE,<br>BRIAN A. JACKSON<br><br>MAGISTRATE JUDGE,<br>SCOTT D. JOHNSON |

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

Following multiple mediations, multiple years of hard-fought litigation, and further discussions between the Parties for several months thereafter, Plaintiffs[1] and Defendants Flowers Foods, Inc. ("Flowers Foods") and Flowers Baking Company of Baton Rouge, LLC ("Flowers/Baton Rouge") (collectively "the Parties") reached a proposed settlement in the above-captioned case. The Parties respectfully request that the Court approve their proposed settlement of this action involving Fair Labor Standards Act ("FLSA") claims and dismiss this case with prejudice. A copy of the settlement agreement and related documents are attached hereto as Exhibit A.

---

[1] The thirteen remaining Plaintiffs in this case are: Jerome King, Barry Devall, Bruce Naquin, Mark Bueche, Bobby Trahan, Nellis Chassion, Benjamin Botos, Donnie Torres, Ray Zeringue, Gregory Lejeune, David Jones, Bryan Roy, and Gordon Frank.  Plaintiff Barry Devall died unmarried on May 21, 2024, but Barry Devall, Jr (the only child and sole heir of decedent Barry Devall), has executed this Settlement Agreement as representative for the Estate of Barry Devall and as sole beneficiary of said estate, as supported by the Declaration of Death, Domicile, and Heirship and Addendum to Settlement Agreement and Release of All claims executed by Barry Devall, Jr. and filed herein as part of Exhibit A.

1

As detailed below, the Court should grant the Parties' Motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' *bona fide* dispute as to liability and alleged damages under the FLSA.[2] Additionally, Plaintiffs also seek an award of attorneys' fees and costs. Defendants do not oppose these requests.

## BACKGROUND

### I. Relevant procedural and factual history

This lawsuit is one of eight lawsuits filed by the same counsel against Flowers Foods and certain subsidiaries alleging distributors of bakery products are misclassified under the FLSA. On October 21, 2015, Plaintiffs initially filed suit against the Defendants in a predecessor suit styled, *Richard, et al. v. Flowers Foods, Inc., et al.*, 6:15-cv-02557-SMH-CBW, WD LA. On April 9, 2021, the *Richard* court decertified that matter, finding Plaintiffs were not "similarly situated." *Richard* ECF Nos. 423 and 441. After the Court's ruling, Plaintiffs' counsel filed the instant lawsuit and six others on behalf of the dismissed opt-in plaintiffs.[3] On October 11, 2021, Plaintiffs filed a Complaint and Jury Demand in this matter containing FLSA and Louisiana state law claims against two Defendants: Flowers Foods and Flowers/Baton Rouge. Flowers Foods is the parent company of numerous operating subsidiaries throughout the country, each of which is organized as a separate legal entity and responsible for its own day-to-day operations. Flowers/Baton Rouge is one such subsidiary.

---

[2] Plaintiffs also alleged claims for illegal fines under the Louisiana Wage Payment Act ("LWPA"), which Defendants denied. These LWPA claims do not require court approval for settlement.
[3] *David Jones, et al. v. Flowers Foods, Inc., et al.*, ED LA 2:21cv1858; *Joseph Ash, et al. v. Flowers Foods, Inc., et al.*, WD LA 1:21cv3566; *Joey Frederick, et al. v. Flowers Foods, Inc., et al.*, WD LA 6:21cv3565; *Austin Works, et al. v. Flowers Foods, Inc., et al.*, WD LA 3:21cv3567; *Michael Coco, et al, v. Flowers Foods, Inc.*, WD LA 2:21cv3564; and *Boon, et al. v. Flowers Foods, Inc., et al.*, WD LA 5:21cv3568.

2

Plaintiffs assert that they are employees who have been misclassified as independent contractors. (ECF 1). They also seek overtime under the FLSA. (*See id.*) Currently, there are thirteen Plaintiffs total in this action.

Defendants strongly dispute these allegations and assert that Plaintiffs' FLSA claims fail for multiple separate, independently-sufficient reasons. First, Defendants contend that Plaintiffs have been properly classified as independent contractors. Second, Defendants contend even if Plaintiffs were employees, which is denied, they are otherwise exempt from the FLSA overtime provisions under the Motor Carrier Act ("MCA") exemption. 29 U.S.C. § 213(b)(1). Third, Defendants contend even if Plaintiffs were employees, which is denied, they are also exempt under the FLSA's "outside sales" exemption. 29 U.S.C. § 213(b)(1). In short, Defendants strongly contest Plaintiffs' claims, and Plaintiffs faced a number of hurdles in this lawsuit, including several recent rulings in the Fifth Circuit and other circuits supporting Defendants' arguments.

Multiple mediations were held in this matter and its related matters. The parties engaged in a mediation on November 9, 2018, before experienced mediator Hunter Hughes, and again, on January 16, 2019, April 4, 2019, and June 5, 2020, before Magistrate Judge Hanna from the U.S. District Court, Western District of Louisiana. On October 18, 2023, the parties again held a mediation in this case before Judge McCluskey. The mediations were conducted at arms-length, with multiple lawyers for Plaintiffs and multiple lawyers for the Defendants. Although the mediations lasted for several hours and included extensive negotiations, the parties were not able to reach a settlement. Instead, the parties continued to litigate, including through discovery producing a significant number of documents and taking depositions. Indeed, throughout the continued litigation, the parties also continued to discuss possible resolution of this case.

Ultimately, as discussed more fully below, the parties agreed to a resolution of this matter in principle on or around September 4, 2024.

## II.     Terms of the proposed settlement

### A.     Settlement amount and allocation

The agreed-to total settlement amount is $108,000.00, inclusive of attorneys' fees, which includes $78,000 combined for Plaintiffs for alleged damages in this Action, $5,000 combined for five Current Distributor Plaintiffs'[4] agreement to sign an amendment to their respective Distributor Agreements, and $25,000 for their attorney's fees and costs. Mr. Botos declined to sign the Amendment and waived the $1,000 in extra consideration for signing the Amendment, and this reduced the total settlement amount from $109,000 (as originally stated in the Settlement Agreement and Release of Claims) to $108,000, as explained in footnote 4 below and in the Benjamin Botos Addendum.  Out of the total $83,000 designated to Plaintiffs, current distributor Benjamin Botos and former distributors Jerome King, Barry Devall, Bruce Naquin, Mark Bueche, Bobby Trahan, Nelis Chassion, and Bryan Roy will each receive $6,000 for their alleged damages for their claims, and current distributors  Gordon Frank, David Jones, Gregory LeJeune, Donnie Torres, and Ray Zeringue will each receive $7,000 for their alleged damages for their claims as

---

[4] Benjamin Botos, Gordon Frank, David Jones, Gregory LeJeune, Donnie Torres, and Ray Zeringue are current distributors still operating under Distributor Agreements with Flowers/Baton Rouge ("Current Distributor Plaintiffs"). The remaining plaintiffs are former distributors and do not have ongoing contractual relationships with any of the defendants. Defendant offered each of the Current Distributor Plaintiffs an extra $1,000 to sign the Amendment.  All of these plaintiffs, with the exception of Mr. Botos, agreed to sign the Amendment and will receive the additional $1,000 in consideration.  Mr. Botos, while settling all of his claims in the lawsuit, declined to sign the Amendment and waived the extra $1,000 in consideration offered for signing the Amendment, as shown in the Benjamin Botos Addendum to Settlement Agreement and Release of Claims, which is included in Exhibit A hereto.

4

well as for signing the Amendment (including the Arbitration Agreement) attached as Exhibit 1 to the Settlement Agreement.

**B.     Release of claims**

In exchange, the Plaintiffs have agreed to dismiss this case, with prejudice. They have also agreed to waive and release the Defendants from all claims in this action, including under the FLSA, up to the period the Settlement Agreement is executed. Additionally, Plaintiffs have agreed to a general release of claims.

**ARGUMENT**

The Parties have reached a Settlement Agreement. The settlement fairly and reasonably resolves the Parties' claims and defenses, was negotiated at arms-length between counsel for all parties, and the Court should enter an order approving the settlement accordingly.

**I.     The proposed settlement appropriately resolves the parties' claims and defenses.**

**A.     Standard for approval of settlement of FLSA collective actions**

In the context of a private lawsuit brought under Section 216(b), a plaintiff may settle and release FLSA claims against a company if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also Stephens v. Take Paws Rescue*, No. CV 21-1603, 2022 WL 1027116, at *1 (E.D. La. Apr. 6, 2022) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court [must] scrutinize[e] the settlement for fairness.")

In reviewing a settlement of a private FLSA claim, the court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of

5

a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *see also Stephens v. Take Paws Rescue*, No. CV 21-1603, 2022 WL 1027116, at *1 (E.D. La. Apr. 6, 2022); *Alaniz v. Maxum Petroleum Operating Company, Inc.*, 2016 WL 6462206 (W.D. Tex. Oct. 31, 2016); *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010).[5] When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### B. A *bona fide* dispute exists over liability and damages.

In reviewing the settlement of a plaintiffs' FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010); *see also Bancroft v. 217 Bourbon, LLC*, No. CV 21-545, 2022 WL 19762998, at *1 (E.D. La. Apr. 12, 2022) ("The court should ensure that the settlement does not allow the employer to negotiate around the FLSA's mandatory requirements."). The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.*; *Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

---

[5] *But see Martin v. Spring Break '83 Productions, L.L.C.,* 688 F.3d 247 (5th Cir. 2012).

6

A *bona fide* dispute exists in this case. Plaintiffs claim that they were misclassified as independent contractors and further contend that they are entitled to overtime under the FLSA. Defendants specifically deny these claims and further deny that Plaintiffs are owed any overtime under the FLSA. Defendants contend they have multiple avenues for success in this case—*i.e.*, Plaintiffs are not entitled to overtime because they are independent contractors, and, assuming Plaintiffs are employees, which is denied, they are otherwise exempt under the MCA and outside sales exemptions. All parties faced litigation risks in this case.

On top of the exemption-liability issue, the Parties also had opposing views on other damages components such as: (1) how to calculate damages; (2) whether liquidated damages were available; and (3) whether a two-year or three-year limitations period applied. Defendants believe they have a good faith basis for believing that the distributors were independent contractors or otherwise exempt from the FLSA, particularly because the independent-contractor classification had survived legal scrutiny before. Moreover, Defendants argue that some of the distributors involved in this settlement only have timely claims if Plaintiffs succeed in showing a *willful* violation of the FLSA, which would render the three-year statute of limitations applicable. If a violation is not willful, the limitations period is only two years. *See id.* Defendants believe Plaintiffs face a significant risk that only the two-year limitations period would apply and that some of the Plaintiffs would be entitled to no relief whatsoever. Finally, Defendants believe they have strong arguments that even if Plaintiffs prevailed, any damages they received should be offset by various tax and other benefits and savings they received as independent contractors that they would not have received as employees.

More importantly, Defendants have been successful in establishing some of their defenses in a related case, which bolsters their chances of success in this matter. In the related *Ash* case, on

7

May 16, 2023, Judge Joseph in the Western District of Louisiana entered a judgment dismissing all of the three plaintiffs' claims against defendants, finding that their overtime claims were barred by the MCA exemption and not viable as a matter of law. He also found the LWPA claims were not viable as a matter of law. *Ash v. Flowers Foods, Inc.*, No. 1:21-CV-03566, 2023 WL 3486029 (W.D. La. May 16, 2023), aff'd, No. 23-30356, 2024 WL 1329970 (5th Cir. Mar. 28, 2024). On appeal, in *Ash,* the Fifth Circuit held that summary judgment to the related Flowers subsidiary was appropriate because: (1) the distributor plaintiffs delivered products that remained in the stream of interstate commerce within the meaning of the MCA exemption; (2) the distributor plaintiffs failed to provide evidence that their smaller vehicles weighed under 10,001 pounds; and (3) the LWPA claims failed because the "deductions taken by Flowers were not penalties associated with violating any sort of rule, but were instead a policy related to wage-payment" that was "expressly authorized" by Plaintiffs. *Ash v. Flowers Foods, Inc.*, No. 23-30356, 2024 WL 1329970, at *3-4 (5th Cir. Mar. 28, 2024).[6]

Further, the Third Circuit Court of Appeals, in an unpublished decision, similarly affirmed an award of summary judgment to a Flowers competitor operating a comparable independent distributor business model, finding the distributors were independent contractors—not employees—under the right to control test. *See Carpenter v. Pepperidge Farm, Inc.*, 2023 WL 4552291 (E.D. Pa. July 14, 2023), *aff'd*, No. 23-2372, 2024 WL 2103257 (3rd Cir. May 10, 2024).[7] Similar decisions upholding the independent contractor model used by others in the industry, along with several favorable arbitration award decisions affirming the Flowers' model, similarly strengthened Flowers defenses here.

---

[6] Plaintiffs subsequently filed a Petition for rehearing *en banc*, which the Fifth Circuit denied on May 7, 2024.
[7] *Carpenter* analyzed IC status under a Pennsylvania wage statute, the WPCL, but analyzed FLSA cases noting they are "informative" to the WPCL analysis. 2023 WL 4552291 at *3.

Although all Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expense associated with full-blown litigation and discovery, and the uncertainty of dispositive motion practice and trial, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendants in exchange for release of claims by Plaintiffs and dismissal of this case with prejudice in order to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### C.     The settlement is fair and reasonable.

In addition to resolving a *bona fide* dispute between the Parties, the settlement achieved is fair and reasonable and should be approved for several reasons.

First, the proposed settlement arises out of an action for alleged unpaid overtime and other "wages" brought by Plaintiffs against their alleged employers. Each Plaintiff will receive an individualized recovery of $6,000 a person for their alleged damages—a fair recovery considering that: (1) Defendants have multiple separate arguments with supporting case law, including a very recent case involving a related subsidiary by the Fifth Circuit, for why the Plaintiffs should get no recovery at all, not to mention the statute of limitations defense that would bar some Plaintiffs' claims completely; and (2) Defendants contend that liquidated damages were not available.  In addition, each of the five Current Distributor Plaintiffs (Frank, Jones, LeJeune, Torres, and Zeringue) who agreed to sign the Amendment will receive an additional $1,000 above the damages settlement for signing the agreed Amendment to their respective ongoing Distributor Agreements.

9

Second, there is no collusion that occurred between counsel. *See Schneider v. Goodyear Tire & Rubber Co.*, No. 13-2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2015) (considering the risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties had engaged in court-supervised negotiations, there was no such risk); *Diaz v. USA Pro. Lab., LLC*, 2021 WL 928031, at *2 (E.D. La. Mar. 11, 2021) ("In addition to the strong presumption in favor of finding a settlement fair, absent evidence to the contrary, there is also a presumption that no fraud or collusion occurred between counsel.") Rather, this settlement was reached as a result of arms-length negotiations between the Parties through experienced attorneys and after months of hard-fought litigation and multiple mediation sessions.

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel, who have the experience to assess the risks of continued litigation and benefits of settlement and have done so in this action. Defense counsel has extensive experience in defending similar claims. Counsel for all Parties have advised their respective clients regarding the settlement, and they have recommended judicial approval: the Court should afford those recommendations weight. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Fourth, the range of possible recovery in this case was uncertain. As noted above, the Parties had very divergent positions on damages components such as whether liquidated (double) damages were appropriate, whether Defendants acted willfully, and whether the half-time overtime calculation method applied, and whether Defendants were entitled to any offset, in addition to the

exemption liability issue. The Fifth Circuit's decision in *Ash* created substantial risk of zero recovery for Plaintiffs, which had to be taken into account in any resolution.

Fifth, the proceedings have advanced to a stage sufficient to permit the Parties and their experienced counsel to collect, obtain, and review evidence, evaluate their claims and defenses, understand the scope of potential damages, and engage in negotiations with the mutual understanding that continuing toward additional formal discovery and completing dispositive motion practice (including decertification) would be a difficult, costly, and uncertain undertaking.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable. Without question, if the case had not settled, the Parties may have faced the prospect of an expensive, lengthy jury trial as well as likely appeals and post-trial motions. The jury trial in this matter was scheduled for December 2025. Rather than take this path, the Parties directed their efforts toward an informed, efficient resolution of Plaintiffs' claims. While a number of issues remain unresolved in this litigation with summary judgment motions pending, preparation for the Parties' mediation sessions enabled counsel to assess the respective strengths and weaknesses of their case and reach the conclusion that settlement is in the Parties' best interests. The settlement eliminates the inherent risks both sides would bear if this case were to continue. Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

## II. **Plaintiffs' counsel's requested attorneys' fees and costs are reasonable and should be fully awarded.**

As set forth in the Affidavit of Buzz Durio attached as Exhibit B, the proposed award of attorneys' fees and expenses is fair, reasonable, and should be approved. Defendant has agreed to pay to Class Counsel $25,000.00 for attorneys' fees, litigation expenses, and costs. In the Fifth

Circuit, the lodestar method is used to analyze fee applications. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Under the lodestar method, "the number of hours reasonably spent on the case [is multiplied] by an appropriate hourly rate in the community for such work." *Id.* The reasonable hourly rate is based on "the prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community…" *Villegas v. Regions Bank*, No. CIV.A. H-11-904, 2013 WL 76719, at *3 (S.D. Tex. Jan. 4, 2013) (citing *Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir. 2002)). Applicants for fees bear the burden of demonstrating the hours they have billed are reasonable, and thus are charged with "properly documenting the hours spent and [submitting] competent evidence of those hours." *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 387 (S.D. Tex. 2016) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also Prater v. Commerce Equities Mgmt. Co.*, No. CIV.A. H-07-2349, 2008 WL 5140045, at *3 (S.D. Tex. Dec. 8, 2008).

After applying the lodestar analysis, courts evaluate the "factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)" to determine whether an upward or downward adjustment is appropriate. *Roussel v. Brinker Int'l, Inc.*, No. CIV.A.H-05-3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010) (Ellison, J.), *aff'd sub nom. Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222 (5th Cir. 2011). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Roussel*, 2010 WL 1881898, at *3 n.1 (citing *Johnson*, 488 F.2d at 717-19). The core issue that both the lodestar method and the Johnson factors are designed to address is "the reasonableness of [the applicant's] fee request at the time the work was performed." *Roussel*, 2010 WL 1881898, at *6.

In this case, the proposed attorney fee and cost award of $25,000.00 is appropriate under the loadstar method and when the *Johnson* factors are applied, particularly given the substantial risks of no recovery for Plaintiffs. As evidenced by the declaration of counsel, Plaintiffs' attorneys' fees and costs far exceed the $25,000.00 that has been requested.[8] The declarations set forth the hourly rates claimed by counsel for Plaintiffs, the hours billed, the expenses incurred, all of which Plaintiffs contend were reasonable and necessary for a case of this nature and considering the *Johnson* factors. This case has been pending for more than three years, has been actively litigated (including through extensive written discovery and document production, depositions, numerous contested motions, and numerous hearings), and was mediated multiple times. Accordingly, Plaintiffs contend (and Defendants have not challenged) that the attorneys' fees award reached as part of this settlement is fair and reasonable.

## **CONCLUSION**

This FLSA settlement is a product of an arms-length negotiation between counsel, which resolves a *bona fide* dispute over both overtime liability and damages. The settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that this Court approve the Parties' settlement agreement and the

---

[8] Further, the Fifth Circuit has recognized that "while a low damages award is one factor which a district court may consider in setting the amount of attorneys' fees, this factor alone should not lead the district court to reduce a fee award." *Hollowell v. Orleans Reg'l Hosp., LLC,* 217 F.3d 379, 392 (5th Cir. 2000). *See also Singer v. City of Waco, Tex.,* 324 F.3d 813, 829-830 (5th Cir. 2003) (refusing to lower attorneys' fees award in light of low recovery because of the strong presumption that the lodestar award is reasonable).

13

distribution of the settlement amount to Plaintiffs in full as described above. Further, Plaintiffs' Counsel requests that this Court award as reasonable the attorneys' fees and litigation costs in the amount requested. Finally, the Parties jointly request that this action be dismissed with prejudice.

Respectfully submitted,

November 14, 2024.

/s/ Steven G. Durio
STEVEN G. DURIO (#05230)
D. PATRICK KEATING (#14417)
RANDY M. GUIDRY (#26909)
**Durio, McGoffin, Stagg & Guidry**
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, LA   70505-1308
Phone: (337) 233-0300
Fax:     (337) 233-0694
Email:  durio@dmsfirm.com
             rick@dmsfirm.com
             randy@dmsfirm.com

THOMAS M. HAYES, IV (#28600)
**Hayes, Harkey, Smith & Cascio, L.L.P.**
2811 Kilpatrick Boulevard (71201)
Post Office Box 8032
Monroe, LA 71211-8032
Phone:  (318) 387-2422
Fax:     (318) 388-5809
Email:  tommy@hhsclaw.com

RYAN M. GOUDELOCKE (#30525)
130 South Audubon Blvd., Suite 105
Lafayette, LA   70503
Phone:  (337) 345-1985
Fax:     (337) 233-9095
Email:  ryan@goudelocke.law

/s/ C. Garner Sanford, Jr.
C. Garner Sanford, Jr. (*pro hac vice*)
GA Bar No. 005020
191 Peachtree Street, NE, Suite 4800
Atlanta, GA 30303
Telephone: 404-881-1300
Facsimile: 404-870-1732
Email: garner.sanford@ogletree.com

/s/ *Andrew J. Halverson*
Andrew J. Halverson (La. Bar. No. 31184)
325 Settlers Trace Blvd, Suite 201
Lafayette LA 70508
Telephone: 337-769-6582
Facsimile: 337-989-0441
Email:  andrew.halverson@ogletree.com

Virginia Wooten (*pro hac vice*)
NC Bar No. 48180
201 South College Street, Suite 2300
Charlotte, North Carolina 28244
Telephone: 704.342.2588
Facsimile: 704.342.4379
Email: virginia.wooten@ogletree.com

Heather R. Hamilton (*pro hac vice*)
700 West 47th Street, Suite 500
Kansas City, Missouri 64112
Telephone: 816-410-2237
Heather.hamilton@ogletree.com

**Attorneys for Defendants**

TRAVIS J. BROUSSARD (#33036)
130 South Audubon Boulevard, Suite 109
Post Office Box 82238
Lafayette, LA 70598-2238
Phone: (337) 316-8135
Fax:     (337) 233-9095
Email: travis.broussard@live.com

*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing document has this date been served to all known counsel of record in this proceeding by:

| | | | | |
|---|---|---|---|---|
| (   ) | Hand Delivery | | (   ) | Prepaid U.S. Mail |
| (   ) | Facsimile | | (   ) | Federal Express |
| (   ) | E-Mail | | ( X ) | CM/ECF System |

Atlanta, Georgia, this 14th day of November, 2024.

/s/ C. Garner Sanford, Jr.
C Garner Sanford, Jr. (*pro hac vice*)